[866 NE2d 1016, 834 NYS2d 688]

In the Matter of S. Elof Nilsson et al., Respondents, v Department of Environmental Protection of City of New York, Appellant.

Argued February 14, 2007; decided April 3, 2007

**POINTS OF COUNSEL**

*Michael A. Cardozo, Corporation Counsel,* New York City (*Alan Beckoff, Stephen J. McGrath* and *Michael Burger* of counsel), for appellant. I. The determination by the Department of Environmental Protection to deny the application for a variance was rational and not arbitrary and capricious. (*Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County,* 34 NY2d 222; *Corliss v Solomon,* 75 AD2d 837; *Matter of Browning-Ferris Indus. of N.Y. v Danahy,* 210 AD2d 477; *Matter of Fineway Supermarkets v State Liq. Auth.,* 48 NY2d 464; *Matter of Howard v Wyman,* 28 NY2d 434; *Matter of Dexter v Town Bd. of Town of Gates,* 36 NY2d 102.) II. Assuming that the Appellate Division properly annulled the Department of Environmental

Protection's (DEP) determination, the Court improperly interfered with DEP's discretion by ordering the agency to grant respondents the variance rather than remanding the matter to the agency to exercise its discretion appropriately and reconsider respondents' application. (*Matter of Brusco v Braun,* 84 NY2d 674; *Matter of Hassig v New York State Dept. of Health,* 5 AD3d 846; *Matter of Mitchell v Essex County Sheriff's Dept.,* 302 AD2d 732; *Matter of Posner v Levitt,* 37 AD2d 331; *Matter of Hamptons Hosp. & Med. Ctr. v Moore,* 52 NY2d 88; *Matter of East Clinton Devs. v Department of Envtl. Conservation of State of N.Y.,* 109 Misc 2d 786; *Matter of Abrams v New York City Tr. Auth.,* 39 NY2d 990; *Jones v Beame,* 45 NY2d 402; *James v Board of Educ. of City of N.Y.,* 42 NY2d 357.)

*Daniels and Porco, LLP,* Carmel (*Robert C. Lusardi* of counsel), for respondents. I. Appellant did not have authority to consider stormwater impacts when reviewing respondents' variance application. II. Appellant did not have authority to consider "impervious surface" issues when reviewing respondents' variance application. III. Appellant applied an improper standard of "substantial hardship" in its review of respondents' variance application. (*Matter of Dexter v Town Bd. of Town of Gates,* 36 NY2d 102; *Matter of St. Onge v Donovan,* 71 NY2d 507; *Matter of Warren v Harris,* 179 AD2d 660; *Grimaldi v Suffolk County Dept. of Health Servs.,* 118 AD2d 621; *Matter of Weinrib v Weisler,* 33 AD2d 923.) IV. The Appellate Division acted within its power when it directed appellant to grant the variance. (*WNEK Vending & Amusements Co. v City of Buffalo,* 107 Misc 2d 353; *Matter of Moore v D'Ambrose,* 57 AD2d 394, 46 NY2d 816; *Matter of Freidus v Guggenheimer,* 57 AD2d 760; *Matter of Scherbyn v Wayne-Finger Lakes Bd. of Coop. Educ. Servs.,* 77 NY2d 753; *Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County,* 34 NY2d 222; *Matter of Treadway-Binghamton Co. v State Liq. Auth.,* 62 Misc 2d 626.)

**OPINION OF THE COURT**

PIGOTT, J.

Intending to build a house on a parcel of vacant land in Putnam County, petitioner S. Elof Nilsson applied for a permit to build a subsurface sewage treatment system (SSTS). The parcel is within what is commonly referred to as the New York City Watershed, where reservoirs provide drinking water to that city and to an increasing number of residents of counties north of it.

Construction within the Watershed is governed by regulations administered and enforced by the City of New York Department of Environmental Protection (DEP) (Rules of City of NY Dept of Envtl Protection [15 RCNY] ch 18). The Watershed Regulations incorporate by reference more stringent local standards enacted by agreement between DEP and the Putnam County Department of Health (PCDOH) (*see* 15 RCNY 18-38 [a] [2]). The DEP-PCDOH standards require that no more than 42 inches of the soil beneath an SSTS be "fill" (new soil added to the site). Nilsson's proposal contemplated the use of as much as 78 inches of fill in places, and DEP therefore denied him a permit.

Nilsson then sought a variance from the provision prohibiting more than 42 inches of fill, stating that compliance was not possible because of the shallow depth of usable preexisting soil in the area where an SSTS could be built. He asserted that, without a variance, there would no longer be a "buildable" lot and this would impose a substantial hardship. DEP responded by requesting that Nilsson's surveying and engineering firm propose various mitigation measures to reduce potential contamination resulting from the use of excessive fill. DEP also asked the engineers to propose mitigation measures for potential stormwater runoff from the new impervious surfaces that residential construction would entail—the house, the driveway and the SSTS itself. Finally, turning to the question of whether a denial of the variance would cause Nilsson substantial hardship, DEP requested information about the date of Nilsson's acquisition of the property.

Nilsson's engineers then proposed the following mitigation measures: enhanced sewage treatment systems for household waste; shallow, grass-lined channels to capture and redirect stormwater runoff from the driveway and SSTS; and a means of dissipating runoff from the roof of the house involving a roof-to-footing drain to a riprap apron. The engineers answered DEP's question about the acquisition of the property, and reiterated Nilsson's claim that, due to the physical conditions of the site, construction on the parcel in compliance with the fill provision was impossible, and this inability to use the property as a "buildable" lot would itself impose a substantial hardship. When DEP requested information regarding Nilsson's other real estate holdings in the vicinity of the subject parcel, the engineers refused.

DEP denied Nilsson's variance application, stating that "[w]hile the applicant has proposed adequate mitigation for the

SSTS itself, [he] has not proposed adequate mitigation measures to offset the potential for adverse water quality impacts associated with stormwater runoff from the new residence, driveway and septic system area" (NY City DEP Variance Determination, June 2, 2004, at 2). In addition, DEP stated that "[t]he applicant has not provided information about his other real estate holdings in the immediate vicinity of the project area, as requested by [DEP], to substantiate a hardship case" (id.).

Petitioners[1] then commenced this CPLR article 78 proceeding, seeking to vacate DEP's denial of the variance as arbitrary, capricious and an abuse of discretion, and asking the court to direct DEP to grant the variance. Supreme Court denied the petition and dismissed the proceeding, holding that DEP's "imposition of further mitigation measures to offset adverse water quality impacts" was rational, and that petitioners failed to prove substantial hardship because they did not show "by competent financial evidence that a reasonable rate of return cannot be realized . . . Mere diminution of value of the property is insufficient to establish substantial hardship."

The Appellate Division reversed, concluding that DEP "acted outside the scope of its authority conferred by the applicable regulations when it considered storm runoff issues and impervious surface impacts, for which no variance was required" (28 AD3d 773, 775 [2006] [citations omitted]). The Court further held that "petitioners' noncontiguous real estate holdings are irrelevant to the issue of whether the subject property is entitled to relief from the strict adherence to the regulations regarding construction of an SSTS" (id. [citation omitted]). The Appellate Division directed DEP to grant the requested variance (28 AD3d at 773). We granted DEP leave to appeal and now modify.

Variances from the requirements of the Watershed Regulations rest in the sound discretion of DEP (see 15 RCNY 18-61 [a]). The burden of proof is on the applicant (15 RCNY 18-61 [a] [4]). 15 RCNY 18-61 (a) (1) (iii) requires an applicant seeking a variance from the requirements of the Watershed Regulations to "[d]emonstrate that the activity as proposed includes adequate mitigation measures to avoid contamination to or degradation of the water supply which are at least as protective of the water supply as the standards for regulated activities set forth in these rules and regulations." In other words, before it

---

1. Petitioners are Nilsson and the co-owners of the parcel, Alan S. Matzkin and Maria V. Matzkin.

grants a variance, DEP must be persuaded that the applicant's proposed mitigation measures will protect the watershed just as much as compliance with the regulation from which the applicant seeks a variance.

■ DEP properly required Nilsson, under 15 RCNY 18-61 (a) (1) (iii), to propose measures to reduce potential contamination resulting from his proposed use of excessive fill. It was an abuse of discretion, however, to require him to propose mitigation of stormwater runoff.

The provisions of the Watershed Regulations concerning stormwater runoff from impervious surfaces are contained in 15 RCNY 18-39.[2] DEP concedes that there is no provision in that section that authorizes it to regulate stormwater runoff on Nilsson's land. Nilsson's engineer has stated, and DEP does not deny, that the subject property and the proposed SSTS are not within the regulated ranges delineated in 15 RCNY 18-39. In short, the stormwater runoff regulations do not apply.

Instead, DEP claims that it is authorized to require mitigation of stormwater runoff simply because approval of the variance from the fill provision would allow the construction of a residence with impervious surfaces. DEP, however, cannot extend its jurisdiction to otherwise unregulated sources of degradation or contamination of the New York City water supply, simply because they might potentially arise from the granting of a variance. If it could, then DEP could require Nilsson to propose mitigation measures to reduce the effect of any pollu-

---

2. The Regulations prohibit "[t]he construction of an impervious surface within the limiting distance of 100 feet of a watercourse or wetland, or within the limiting distance of 300 feet of a reservoir, reservoir stem, or controlled lake" (15 RCNY 18-39 [a] [1]). Subdivision (a) (5) governs construction of a new house. "[C]onstruction of a new individual residence within the limiting distance of 300 feet of a reservoir, reservoir stem, or controlled lake is prohibited" (15 RCNY 18-39 [a] [5] [i]). There are also restrictions on the construction of a new individual residence in a subdivision within the limiting distance of 100 feet of a watercourse or wetland (15 RCNY 18-39 [a] [5] [ii]). Additionally, under certain circumstances, "[c]onstruction of a new individual residence . . . within the limiting distance of 100 feet of a perennial stream or wetland requires an individual residential stormwater permit" from DEP (15 RCNY 18-39 [a] [5] [iii]). Subsequent subdivisions specify under what circumstances stormwater pollution prevention plans are required (see 15 RCNY 18-39 [b]). The provision most pertinent to Nilsson's planned construction requires the preparation of such plans when "[c]onstruction of a new solid waste management facility or alteration of modification of an existing solid waste management facility within 300 feet of a watercourse or wetland or 500 feet of a reservoir, reservoir stem or controlled lake" is proposed (15 RCNY 18-39 [b] [3] [v]).

tion source associated with a residence, from automobile exhaust emissions to domestic animal waste. Such broad jurisdiction would render meaningless the precise provisions of the Watershed Regulations that specify the distances from various water bodies within which construction may be regulated.

■ Moreover, it was an abuse of discretion to deny the variance application on the basis that Nilsson did not provide information on his other real estate holdings "in the immediate vicinity" of the subject parcel. The request to provide "information regarding the applicant's real estate holdings in the vicinity of the subject lot" (letter from DEP to John Delano, Jan. 30, 2004) was too broad.

An applicant seeking a variance from the Watershed Regulations is required to "[d]emonstrate that for the proposed use or activity for which the variance is requested, compliance with the identified provisions of the rules and regulations would create a substantial hardship *due to site conditions or limitations*" (15 RCNY 18-61 [a] [1] [iv] [emphasis added]). This provision requires the applicant to describe those physical conditions on the subject parcel that make compliance with a particular regulation difficult—or impossible—and thereby explain the perceived need for a variance. While the hardship of a landowner is necessarily economic in nature, the Watershed Regulations contain no express requirement that a variance applicant provide evidence of projected financial loss. In this respect, although both types of application require proof of "hardship," the procedure for applying for a variance from the Watershed Regulations differs from the use variance application process in the zoning context, which requires proof, by competent financial evidence, of a substantial lack of reasonable return (General City Law § 81-b [3] [b] [i]; Town Law § 267-b [2] [b] [1]; Village Law § 7-712-b [2] [b] [1]).

Where compliance with a provision of the Watershed Regulations is possible, but the applicant claims that it is prohibitively expensive, DEP may reasonably require the variance applicant to quantify the "substantial hardship" by submitting an estimate of the costs of compliance. But where the hardship claimed is the *impossibility* of building a residence on the parcel, as Nilsson's engineers repeatedly noted, there is little more to be said.

DEP may, however, reasonably request information about an applicant's *contiguous* real estate holdings, because an applicant

who could combine lots may be able to minimize any hardship (*see* NY City DEP Variance Determination, June 2, 2004, at 2). Because Nilsson failed to provide information concerning contiguous holdings to DEP, the question whether he demonstrated substantial hardship must be remitted to DEP for reconsideration.

Accordingly, the order of the Appellate Division should be modified, with costs to petitioners, by remitting to Supreme Court, with directions to remand to the New York City Department of Environmental Protection for further proceedings in accordance with this opinion, and, as so modified, affirmed.

Chief Judge KAYE and Judges CIPARICK, GRAFFEO, READ, SMITH and JONES concur.

Order modified, etc.